# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Victoria Lorraine Sanchez, Appellant.

Appellate Case No. 2018-002163

————————————

Appeal From Greenville County
Letitia H. Verdin, Circuit Court Judge

————————————

Opinion No. 5875
Heard October 12, 2021 – Filed December 8, 2021

————————————

## REVERSED AND REMANDED

————————————

Appellate Defender Adam Sinclair Ruffin, of Columbia,
for Appellant.

Attorney General Alan McCrory Wilson and Assistant
Attorney General Mark Reynolds Farthing, both of
Columbia, and Solicitor William Walter Wilkins, III, of
Greenville, for Respondent.

————————————

**THOMAS, J.:** Victoria Lorraine Sanchez appeals her convictions for trafficking
more than twenty-eight grams of heroin and unlawful conduct toward a child,
arguing, *inter alia*, the trial court erred in refusing to charge her requested
circumstantial evidence jury charge. We reverse and remand.

**FACTS**

During a pretrial motion to suppress, Andrew Reese testified he was working as a deputy on a narcotics interdiction team for the Greenville County Sheriff's Office (GCSO) and was responsible for locating and seizing narcotics and other illegal items being transported on the interstate. On June 28, 2017, the interdiction team received a tip from the Department of Homeland Security identifying a silver Kia Sorrento that had been observed at a suspected drug location in Atlanta and was headed north on I-85. Reese stopped Sanchez's silver Kia after she crossed lane lines and was too-closely following a tractor trailer as she was traveling north on I-85.

Reese approached the vehicle and Sanchez handed him her Texas identification card, insurance documentation insuring Rigoberto Guzman, Jr., registration information in another man's name, a bill of sale indicating a sale of the vehicle from Edwin Campos to Sanchez, and an offer to purchase a 2014 Chrysler for $4,900. Sanchez told Reese she was buying the vehicle from her cousin and had put down a $4,000 deposit. Reese began questioning Sanchez, who told him she left Laredo, Texas, for Atlanta, stayed a week with family, and was traveling to New Jersey to visit family for two weeks. She also stated a child in the vehicle was her child and her other two children were in Texas with her boyfriend. According to Reese's dash camera video, Reese asked Sanchez to exit the vehicle approximately three-and-a-half minutes into the stop. Approximately twelve minutes into the stop, Reese asked for consent and handed Sanchez warning tickets. Sanchez consented to the search. Reese described Sanchez as calm throughout the process. By the time Reese handed Sanchez the warnings, Deputy Wasserman and Deputy David Harrison, Jr., both also of the GCSO, had arrived, having been requested by Reese to assist in the search.

Reese testified he first searched the front seat area, including Sanchez's purse, and then moved to search the luggage in the trunk of the car. Harrison testified he had seventeen years of experience in highway patrol, thirteen of which were on the interdiction team. Based on his training, the tip, and Reese's suspicions, Harrison suspected the vehicle might contain an "aftermarket hidden compartment." Harrison testified that on a small SUV like the Kia, he typically looked on the floorboard, underneath the vehicle, and on the floor above the gas tank. In this case, Harrison looked underneath the vehicle and noticed the exhaust and gas tank were lower than they should have been. He also noticed unusual, elongated bolts that were freshly painted black, whereas the remainder of the undercarriage was

grimy. Harrison noticed the welding on the bolts was not factory welding. Harrison concluded the vehicle had a hidden compartment.

Harrison retrieved a crowbar, removed the backseat, and looked at the cover for the fuel pump. When he touched it to pull it open, a screw popped off. The screw contained traces of silicone indicating it had been cut off and glued onto the panel lid to make it appear as if it was in use. Packages of what tested to be heroin were inside the compartment. The trial court watched the video of the stop and search and denied Sanchez's motion to suppress the heroin.

During trial, Reese and Harrison similarly testified to the tip, stop, and search. Reese additionally testified that while Sanchez was being booked into the detention center, she admitted she had a $20 bill with cocaine residue on it in her bra. The heroin found in the vehicle, estimated at a street value of $1.73 million, was admitted over Sanchez's renewed objection. Reese admitted he never investigated the seller of the vehicle despite the seller's address on the bill of sale and further admitted he did not test the hidden compartment for fingerprints.

Sanchez moved for directed verdicts, arguing there was insufficient evidence of her knowledge that the vehicle contained heroin. The trial court denied the motions. Sanchez also requested the circumstantial evidence jury charge approved in *State v. Logan*, 405 S.C. 83, 747 S.E.2d 444 (2013). The trial court denied the request. Sanchez was convicted and sentenced to thirty-two years imprisonment for trafficking in heroin and ten years concurrent for unlawful conduct toward a child. This appeal followed.

## STANDARD OF REVIEW

"In criminal cases, we review the decisions of the trial court only for errors of law." *State v. Gilmore*, 396 S.C. 72, 77, 719 S.E.2d 688, 690 (Ct. App. 2011). "Therefore, an appellate court is bound by the trial court's factual findings unless they are clearly erroneous." *State v. Banda*, 371 S.C. 245, 251, 639 S.E.2d 36, 39 (2006). In our review, "this [c]ourt is limited to determining whether the trial court abused its discretion." *State v. Edwards*, 384 S.C. 504, 508, 682 S.E.2d 820, 822 (2009).

## LAW/ANALYSIS

Sanchez argues the trial court erred in refusing to give her requested circumstantial evidence jury charge. We agree.

Trafficking in heroin is defined as:

> Any person who knowingly sells, manufactures, cultivates, delivers, purchases, or brings into this State, or who provides financial assistance or otherwise aids, abets, attempts, or conspires to sell, manufacture, cultivate, deliver, purchase, or bring into this State, or who is knowingly in actual or constructive possession or who knowingly attempts to become in actual or constructive possession of: . . . heroin . . . is guilty of a felony which is known as "trafficking in illegal drugs . . . ."

S.C. Code Ann. § 44-53-370(e)(3) (2018).  The trafficking statute "specifically requires a person act 'knowingly.'"  *State v. Taylor*, 323 S.C. 162, 165, 473 S.E.2d 817, 818 (Ct. App. 1996) (addressing a previous version of the trafficking statute). A "defendant's knowledge and possession [of illegal substances] may be inferred."  *State v. Heath*, 370 S.C. 326, 329, 635 S.E.2d 18, 19 (2006).  "In drug cases, the element of knowledge is seldom established through direct evidence, but may be proven circumstantially."  *State v. Hernandez*, 382 S.C. 620, 624, 677 S.E.2d 603, 605 (2009).  "The State has the burden of proving the defendant guilty beyond a reasonable doubt.  This burden rests with the State regardless of whether the State relies on direct evidence, circumstantial evidence, or some combination of the two."  *Logan*, 405 S.C. at 99, 747 S.E.2d at 452.

In *Logan*, our supreme court reconsidered the circumstantial evidence jury instruction given in criminal trials.  405 S.C. at 90−100, 747 S.E.2d at 448−53. The court mandated a new circumstantial evidence jury charge, "when so requested by the defendant[,]" containing the following language:

> There are two types of evidence which are generally presented during a trial—direct evidence and circumstantial evidence.  Direct evidence directly proves the existence of a fact and does not require deduction. Circumstantial evidence is proof of a chain of facts and circumstances indicating the existence of a fact.
>
> Crimes may be proven by circumstantial evidence.  The law makes no distinction between the weight or value to

be given to either direct or circumstantial evidence, however, *to the extent the State relies on circumstantial evidence, all of the circumstances must be consistent with each other, and when taken together, point conclusively to the guilt of the accused beyond a reasonable doubt.* If these circumstances merely portray the defendant's behavior as suspicious, the proof has failed.

*Id.* at 99, 747 S.E.2d at 452 (emphasis added). "When requested, the *Logan* charge must be given in cases based in whole or part on circumstantial evidence." *State v. Herndon*, 430 S.C. 367, 371, 845 S.E.2d 499, 501 (2020).

An erroneous failure to give the *Logan* charge upon request must be prejudicial to the defendant; thus, the appellate court must apply the harmless error analysis. *Id.* at 371, 845 S.E.2d at 502; *see State v. Jenkins*, 412 S.C. 643, 651, 773 S.E.2d 906, 909–10 (2015) (explaining a harmless error analysis looks at the prejudicial nature of the error to determine if it reasonably affected the result of the trial). Previewing a trial judge's jury instructions, the appellate court must view the jury charge as a whole and in light of the evidence and issues presented at trial. *State v. Simmons*, 384 S.C. 145, 178, 682 S.E.2d 19, 36 (Ct. App. 2009). "A trial court's decision regarding jury charges will not be reversed where the charges, as a whole, properly charged the law to be applied." *State v. Wharton*, 381 S.C. 209, 213, 672 S.E.2d 786, 788 (2009). A jury charge is appropriate if it is substantially correct and adequately covers the law applicable to the case. *State v. Foust*, 325 S.C. 12, 16, 479 S.E.2d 50, 52 (1996).

As previously stated, our supreme court in *Herndon* stated that "the *Logan* charge must be given in cases based in whole or part on circumstantial evidence." *Herndon*, 430 S.C. at 371, 845 S.E.2d at 501. The State's case against the defendant in *Herndon* was "almost exclusively circumstantial." *Id.* at 373, 845 S.E.2d at 502. In applying the harmless error test, the court noted it "must be careful not to weigh the evidence." *Id.* at 373 n.6, 845 S.E.2d at 502 n.6. In *State v. Dent*, this court likewise found the trial court erred in refusing to give the *Logan* charge upon request. 434 S.C. 357, 362−63, 863 S.E.2d 478, 481 (Ct. App. 2021), *reh'g denied*, Oct. 18, 2021. In determining the error was not harmless, this court in *Dent* relied in part on the fact that "[t]here was no physical evidence, and the State spent substantial time in summation explaining to the jury that the case was 'about circumstantial evidence.'" *Id.* at 363, 863 S.E.2d at 481.

In this case, Sanchez requested the *Logan* charge.  The court denied the request and charged the following:

> There are two types of evidence which are generally presented during a trial:  direct evidence and circumstantial evidence.  Direct evidence is the testimony of a person who claims to have actual knowledge of a fact, such as an eyewitness.  It is evidence which immediately establishes the main fact to be proved.
>
> Circumstantial evidence is proof of the chain of facts and circumstances indicating the existence of a fact.  It is evidence which immediately establishes collateral facts from which the main fact may be inferred.  Circumstantial evidence is based on inference and not on personal knowledge or observation.
>
> The law makes absolutely no distinction between the weight or value to be given to either direct or circumstantial evidence.  Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence.  You should weigh all the evidence, if you are not convinced of the guilt of the defendant beyond a reasonable doubt, you must find the defendant not guilty.

The trial court's charge neglected to include the language from *Logan*, "to the extent the State relies on circumstantial evidence, all of the circumstances must be consistent with each other, and when taken together, point conclusively to the guilt of the accused beyond a reasonable doubt." *Logan*, 405 S.C. at 99, 747 S.E.2d at 452.  Based on the omission of the mandatory language in *Logan*, and after a review of the trial court's instructions as a whole, we agree with Sanchez that the trial court erred in refusing to give the *Logan* charge upon her request, and Sanchez was prejudiced by the error.  *See Dent*, 434 S.C. at 362, 863 S.E.2d at 480−81 ("To warrant reversal, a trial judge's refusal to give a requested jury charge must be both erroneous and prejudicial to the defendant." (quoting *State v. Adkins*, 353 S.C. 312, 319, 577 S.E.2d 460, 464 (Ct. App. 2003))).

Similar to *Herndon*, the evidence of Sanchez's knowledge of the drugs was largely circumstantial.  The State's witness admitted there was no investigation of the

seller of the vehicle or tests on the hidden compartment.  Furthermore, there was no direct evidence of Sanchez's knowledge of the hidden compartment or drugs.  As in *Dent*, the State spent a significant portion of its closing argument on circumstantial evidence.  We find the trial court erred in failing to grant Sanchez's request to charge the jury with the *Logan* instruction on circumstantial evidence.  In addition, we find the error was not harmless.

**CONCLUSION**

Based on the foregoing, Sanchez's convictions are

**REVERSED AND REMANDED.**[1]

**HUFF and GEATHERS, JJ., concur.**

---

[1] Because this finding is dispositive, we decline to address Sanchez's remaining issues on appeal.  *See State v. Hepburn*, 406 S.C. 416, 428 n.14, 753 S.E.2d 402, 408 n.14 (2013) (declining to review remaining issues when a determination of a prior issue was dispositive of the appeal).